EDWARD S. McDONALD, IMP'D, ETC.,

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Conspiracy to Defraud Cook County—False Pretenses—Misdemeanor—Jurisdiction—Evidence—Admissibility—Other Offenses—Books of Account—"False Books"—General Conspiracy—Instructions—Improper Remarks of Counsel—Jury—Special Venire—Challenge to Array—Correction of Error—Bill of Particulars—Office and Effect of.*

1. An appeal lies to this court in all criminal cases below the grade of felony.

2. A conspiracy to defraud a county by means of false pretenses is a misdemeanor.

3. The true office and effect of a bill of particulars, in criminal as well as in civil cases, is to limit and make specific the claim or charge to be proved and not to confine or restrain the offer of any relevant evidence which will support the charge as thus limited.

4. Any evidence which tends to prove the crime charged, or which tends

McDonald v. The People.

to support a pertinent hypothesis, is competent. although it may also tend to prove a distinct offense, which may be the subject of a separate prosecution.

5. In a case of conspiracy it is proper to show the entire history and plan of the conspiracy and whatever has been done in pursuance thereof, in so far as may be necessary to connect the defendants with the crime charg·d and to explain their acts and motives, although they may thereby be implicated in numerous overt acts constituting distinct indictable offenses, and although the conspiracy may be disclosed in numerous indictable aspects.

6. Relevant evidence found in the record must be regarded by this court as properly there, unless it appears that some valid, specific objection to it was called to the attention of the trial court.

7. In a prosecution for a conspiracy to defraud Cook County by means of false pretenses, it is *held:* That evidence tending to prove the conspiracy charged, although touching other overt acts than those specified in the bill of particulars, was properly admitted; that an objection, that certain bills offered in evidence were not sufficiently identified, not having been made when they were offered, must be treated as waived; that certain general and "false" books of account were properly admitted in evidence; that certain statements attached to the cover of the ledger were properly used in evidence, there being no specific objection to them; that any evidence tending to support the hypothesis of a general conspiracy, embracing the particular transaction in question, was relevant to the issue; that the admission of certain improper evidence could not have injured the defendants; that there was no substantial error in giving and refusing instructions; that it was proper for the court to cure an error in sustaining an oral demurrer to the challenge to the array of jurors; and that certain improper remarks of counsel could have had no such material influence as to authorize the disturbance of a verdict warranted by the evidence.

[Opinion filed February 16, 1888.]

In error to the Criminal Court of Cook County; the Hon. Henry M. Shepard, Judge, presiding.

Mr. William S. Forrest, for plaintiff in error.

It is insisted by the plaintiff in error that the purpose of a bill of particulars is to inform the defendant of the nature of the evidence, and the particular transactions intended to be proved under the indictment, in order that he may know what he must prepare himself to meet, and that its effect is to limit that evidence on the trial to the items and transactions stated in the particulars. Colson v. Selby, 1 Esp. 452; Hatchet v. Marshal, 1 Peake's Cases, 229; Holland v. Hopkins, 3 Esp.

168; Wade v. Beasley, 4 Esp. 7; Commonwealth v. Giles, 1 Gray, 466; Commonwealth v. Snelling, 15 Pick. 321; People v. McKinney, 10 Mich. 54; United States v. Schimmer, 5 Bis. 195.

Having delivered the particulars to the defendants, having solemnly informed them before they were called for trial that the people relied upon the twelve normal school bills of account and having permitted the defendants to enter upon the trial with a jury impaneled according to the forms of law, under the supposition that those twelve bills were the only bills upon which he was to rely to sustain the indictment, the people should have been strictly confined to the particulars given or, as Harris says in his work entitled "Before Trial," should have been "pinned down to them." Such has always been held to be the effect of particulars delivered in both civil and criminal cases. It matters not that the State's Attorney may have made a mistake, or that he may have been negligent, or that he may have been cunning, as he and his assistant private counsel thought, setting a snare for the defendants. The effect of particulars delivered is not varied by the peculiar circumstances and necessities of the case. That has always been held to be the rule and must be held to be the rule, otherwise a defendant can never know before trial what he must come prepared to meet, in cases of conspiracy and embezzlement, where, by the statute of this State and numerous decisions at common law, very general forms of pleading are allowed. If the court may permit the prosecution to give in evidence a single item or transaction not mentioned in the particulars, he may, by the same reasoning, justify himself in admitting an indefinite number. The only safe and certain rule is the one that has been always followed—that no departure from the particulars delivered will be tolerated or upheld. See Jackson v. People, 18 Ill. App. 508; Strong v. State, 86 Ind. 208.

The court erred in repeatedly permitting the State's Attorney, in his closing address, to make improper remarks and appeals to the jury, also in permitting the State's Attorney and his assistants to make improper remarks in the hearing of the jury throughout the trial. It requires no argument to show

that said remarks and appeals worked great injury to the plaintiff in error, and had weight with the jury. See Chase v. City of Chicago, 20 Ill. App. 274; Fox v. People, 95 Ill. 71; Wilson v. People, 94 Ill. 299; Duffin v. People, 107 Ill. 113; Campbell v. People, 109 Ill. 565.

Mr. C. Beckwith, for plaintiff in error.

After the closest scrutiny of the evidence, relevant and irrelevant, we are unable to say that the plaintiff in error was guilty of any offense. Schneider admits that McDonald was to have such warrants as he handled at twenty per cent. discount, and McDonald so states, but this fact does not tend to prove that he was guilty of any offense. When every fact and circumstance proven in the case is arranged in their order, and full force given to each act and conversation of McDonald, the result is entirely consistent with the testimony of McDonald. Schneider is not corroborated in his testimony by any fact or circumstance. We will not enter upon the discussion of whether one accomplice can corroborate another as no such question arises in the case. Corroboration, in a legal sense, is additional independent testimony to prove some one or more material facts necessary to sustain the charge of the indictment. The books, by whomsoever made, and the transactions relative to the county orders, do not corroborate the testimony of Schneider. Schneider does not testify to any conversation between Faber and McDonald, and, therefore, Faber does not corroborate him in any sense whatever. Schneider was suborned to testify by all the influence which could be brought to bear upon him. He was not only offered immunity, but reward. It may further the ends of justice that immunity should sometimes be offered to noted criminals, but we have never known the administration of justice to be furthered by pecuniary inducements held out to criminals to testify. The parties holding out such inducements may believe that they are obtaining evidence of the truth, but when the facts sought to be elicited are solely within the knowledge of the suborned witness, his statement is not such evidence as ought to be relied upon. No one but Schneider and McDonald know

whether they had the conversation behind the boiler and in the beer saloon, testified to by Schneider. If Schneider's statement relative thereto is untrue, McDonald is innocent, and it would be far better to solve that doubt in his favor than to impose punishment based upon the testimony relative thereto of a self-acknowledged thief, perjurer and scoundrel, obtained by flagrant subornation. It is admitted that Schneider did work and furnished materials for making repairs upon the Normal School building. It is admitted that books, such as they are, were kept relative to the materials furnished and work done. It is admitted that McDonald was to have twenty per cent. for the orders which he handled. It is admitted that Schneider sold the other orders in the manner detailed in the testimony. It is admitted that McDonald loaned money to Schneider in his pecuniary distress beyond the amount of orders handled by him, expecting to receive it back from orders which might thereafter be sold. It is admitted that Schneider had charged upon his books excessive prices for materials furnished and labor done, but there is no evidence that McDonald ever saw these books or knew of the charges therein contained. It is conceded that the people could have proven McDonald's knowledge of the contents of the books or information of what they contained, if he had any such knowledge or information. It is conceded that Schneider made out false and fraudulent bills, but there is no evidence that McDonald ever saw these bills or knew of their contents. It is not claimed that McDonald ever endeavored to have any of these bills allowed. The assertion that there was an agreement between Schneider and McDonald to make false bills and divide the profits, depends entirely upon the statement of Schneider. No witness can be called to contradict the assertion. No one heard the conversations between them, and after they were had they were never alluded to in the hearing of any one, and Schneider says they were not alluded to between themselves. Under these circumstances, it was of the last importance that the case should have been submitted to the jury entirely free from evidence having a tendency to blacken the character of the plaintiff in error, or to mislead and confuse

McDonald v. The People.

them relative to other transactions, and the verdict of the jury can only be accounted for from the many errors of the court below in this respect. If the trial had been conducted according to the rules of law, and no improper evidence had been allowed to go to the jury, we confidently believe the plaintiff in error would have been acquitted.

Messrs. Julius S. Grinnell, State's Attorney, Franc's W. Walker and Edmund Furthmann, Assistant State's Attorneys, John Lewis and I. N. Stiles, for defendants in error.

The object of a bill of particulars is not to set forth and specify evidence which the production proposed to introduce, but the specific charge upon which they intend to rely. The bill of particulars does not limit the evidence in any other way than a special count does. Any fact, circumstance, matter or transaction may be given in evidence, though not mentioned in the bill of particulars, which would have been competent if the matter set forth in the bill of particulars had been made the subject of a special count. See Starkweather v. Kittle, 17 Wend. 21; Gilpin v. Howell, 5 Pa. St. 41, 53; Babcock v. Thompson, 3 Pick. 446, 448; Chesapeake & O. C. Co. v. Knapp, 9 Pet. 541, 563, 564; Rex v. Hamilton, 7 C. & P. 448; 32 E. C. L. R. 701.

"The use of a bill of particulars is to apprise a party of the specific demands of his adversary when the pleadings are general and leave uncertain what is particularly demanded either in a declaration or notice of set-off, and has no application whatever when the demand is specifically set forth in the pleadings." People v. Genesee Common Pleas, 4 Wend. 200; Day v. Davis, 5 C. & P. 340; 24 E. C. L. R. 595.

The general rules of pleading, practice and evidence are the same in criminal as in civil cases. Commonwealth v. Snelling, 15 Pick. 321, 330, 331; Regina v. Rearden, 4 Rus. & R. C. R. Cas. 76, 80.

Bishop says that when an indictment is couched in general terms a bill of particulars may be required, "the rule as to which is, that the particulars shall impart the same information which a special count would do, not descending to specify

acts with time and place; on the one hand enabling the
defendant fairly to defend himself, and on the other hand
not fettering the prosecution" 1 Dish. Crim. Proc., Sec.
5644; Roscoe Crim. Ev. 191. See also Duncan v. Hill, 2
Brod. & B. 681; 6 E. C. L. R. 328; Commonwealth v. Giles,
1 Gray, 466.

There was but one conspiracy as to all the Schneider jobs.
Whatever was within the scope and intention of the original
conspiracy is part of that conspiracy. The fact that it was to
operate on successive occasions and in respect to different
institutions only goes to aggravate the offense. The offense
was complete when the conspiracy was formed. There is no
evidence that it was ever changed or that it was ever extended
to any matter not in the contemplation of the parties when
the scheme was originally concocted. Suppose the conspira-
tors had been apprehended before any bill had been presented
by Schneider, would any one contend that they could be con-
victed of a separate offense for every different institution,
contract or job with respect to which the conspirators de-
signed to defraud the county?

The case may be likened to a theft at the same time and
place of several articles, the property of the same person.
This is but one offense. Thus the larceny of a horse, buggy
and harness at one time is one crime. Waters v. People, 104
Ill. 544; State v. Cameron, 40 Vt. 55.

And generally the larceny of different articles from the
same person, at the same time and place, is one offense. State
v. Williams, 10 Humph. 101; Wharton Crim. Pl. & Pr., Sec.
470; State v. Egglesht, 41 Iowa, 574; Adams v. State, 16 Tex.
App. 162; State v. Colgate, 31 Kan. 511.

And generally a conviction on an indictment charging as a
distinct offense a part of one transaction bars a prosecution on
the other parts. Wright v. State, 17 Tex. App. 152; Wilson
v. State, 45 Tex. 76; Jackson v. State, 14 Ind. 327; People v.
Van Kuren, 5 Parker C. R. 66; State v. Benham, 7 Conn. 414.

The whole of a criminal transaction may be proved, though
only part is charged in the indictment. State v. Martin, 82
N. C. 674; Satterwhite v. State, 6 Tex. App. 609.

McDonald v. The People.

It is no objection if the evidence tends to show an offense of a higher grade than that charged, if it includes the offense alleged in the indictment. Commonwealth v. Andrews, 132 Mass. 263; People v. Ward, 3 Parker C. R. 681; State v. Mulholland, 16 La. Ann. 376.

Any evidence which tends to prove the crime charged, or which, in the language of Wharton, tends to support a pertinent hypothesis, is competent, although it may also tend to prove a distinct offense, which is or may be the subject of a separate prosecution. And if two or more crimes are so blended together in their history and perpetration that the story of one can not be separated from that of the others or made intelligible without referring to the others, then the story of all may be detailed to the jury. Roscoe Crim. Ev. 90; State v. Folwell, 14 Kan. 105; Commonwealth v. Sturtevant, 117 Mass. 122; Mason v. State, 42 Ala. 532; Regina v. Cobden, 3 Fost. & F. 833; Heath's Case, 1 Rob. (Va.) 735; State v. Witham, 72 Me. 531; State v. Harold, 38 Mo. 496; Speights v. State, 1 Tex. App. 551; Fernandez v. State, 4 Tex. App. 419; Washington v. State, 8 Tex. App. 377; Rex v. Salisbury, 5 C. & P. 155; 24 E. C. L. R. 502; Regina v. Reardon, 4 Fost. & F. 833.

When the crime charged is one of a system of mutually dependent crimes, executed in pursuance of a preconcerted plan, it is proper to prove such other crimes, for the purpose of showing the system or plan, and the intent and purpose of the accused in doing the acts which are claimed to constitute the crime charged. Wharton's Crim. Ev., Sec. 32, p. 37; Goersen v. Commonwealth, 99 Pa. St. 388.

Whenever a party's intent is in issue, it is proper to prove that he has committed or been implicated in similar offenses at about the same time. Whart. Crim. Ev., Sec. 46; Jackson v. People, 18 Ill. App. 508; Commonwealth v. Jackson, 132 Mass. 16; Thomas v. People, 59 Ill. 160.

In all cases of conspiracy and in all prosecutions for crimes perpetrated in pursuance of a conspiracy, it is proper to show the entire history and plan of the conspiracy, and whatever has been done in pursuance of the conspiracy in so far as may

be necessary to connect the defendants with the crime charged, and to explain their acts and motives, although the defendants may thereby be implicated in numerous overt acts constituting distinct indictable offenses, and although the conspiracy may be disclosed in numerous indictable aspects. Ford v. State, 34 Ark. 649; State v. Greenwade, 72 Mo. 298; Bloomer v. State, 48 Md. 521; State v. Glidden, 8 Atl. Rep. (Conn.) 890; Card v. State, 9 N. E. R. (Ind.) 591; Campbell v. Commonwealth, 84 Pa. St. 187; Carroll v. Commonwealth, 84 Pa. St. 107; State v. McCahill, 30 N. W. R. (Ia.) 553.

The rule has been often reiterated and applied by the Supreme Court that "where the result reached by a judgment is clearly right, it will never be reversed for errors which do not affect the substantial merits of the case." Wilson v. People, 94 Ill. 299, 327; Ritzman v. People, 110 Ill. 362, 371; Lander v. People, 104 Ill. 248; Calhoun v. O'Neal, 53 Ill. 354.

" The criminal laws of this State must be enforced. And if it is not already understood, it is high time it should be, that where a case is clearly made out against the accused, and the jury have so found, this court will not reverse for a mere technical error, which it can see could not have affected the result." Ritzman v. People, 110 Ill. 362, 371.

MORAN, P. J. Plaintiff in error was jointly indicted with three others, to wit, McGarigle, Schneider and Faber, for conspiracy to defraud Cook County by means of false pretenses. Plaintiff in error and McGarigle were tried together, and were found guilty by the jury, and their punishment fixed at three years in the penitentiary.

Motions for a new trial and in arrest of judgment, made in behalf of the plaintiff in error, were overruled by the court and judgment entered on the verdict and sentence duly imposed. The record was filed in this court and a writ of error allowed, which was made a supersedeas, and the case now comes up for decision, upon the error assigned. A preliminary question has been raised by the State's Attorney by a motion to quash the writ of error, on the ground that this court has no jurisdiction to entertain the writ in cases of this class. The point needs but brief discussion. The offense charged is a

misdemeanor. Lamkin v. People, 94 Ill. 501. Sec. 88 of the Practice Act as amended in 1879, required all cases below the grade of felony to be taken from the trial courts to the Appellate Court. Smith v. People, 98 Ill. 407.

The act which went in force on July 1, 1887, and which is entitled "An Act to amend Sec. 8 of an Act to establish Appellate Courts," does not expressly or by implication repeal Sec. 88 of the Practice Act, but so far as jurisdiction in this court in misdemeanors is concerned, is in accord with it.

The Act of 1887 is clumsily and inartificially worded, but we regard it as clear on the whole that the Legislature did not intend to relieve this court of the jurisdiction conferred in 1879.

Plaintiff in error was tried under an indictment containing five counts, each charging a conspiracy of the persons indicted with each other and with persons unknown, to obtain money from Cook County by false pretenses. Each count was drawn so as to charge an offense under Sec. 46 of the Criminal Code. The sixth count charges a conspiracy to obtain the money of Cook County by false pretenses by means of false and fraudulent writings and charges for materials and work to be furnished by Nicholas Schneider in making certain changes and repairs in the normal school. The other counts charged conspiracy by general false pretenses. At the request of the defendants the court required the State's Attorney to furnish a bill of particulars. The particulars furnished were in substance a statement that the dates between which the labor was done or pretended to have been done, and the material furnished or pretended to have been furnished by Nicholas Schneider, were January 1, 1886, until January 1, 1887, and the dates and numbers of twelve bills, all being bills for work and material on the normal school, were given and such bills were stated to be the bills relied on.

On the trial the evidence introduced on the part of the people was not confined to that which tended to show a fraudulent combination between the alleged conspirators—McDonald, McGarigle, Schneider and Faber—relating to the said twelve normal school bills alone, but other bills of said Schneider

against Cook County for services rendered and materials furnished at the insane asylum, infirmary, court house and hospital, were admitted in evidence, in connection with testimony tending to show a combination between the parties charged to obtain money of the county by means of false pretenses, with regard to the said bills for work and materials for said several county institutions. Evidence was also admitted of various separate acts done and conversations had by the individual defendants in the absence of the other defendants, and of acts and conversations of persons other than the persons charged in the indictment, done or had in the absence of all the persons charged, none of which said acts or conversations had direct reference or distinct relation to the said normal school bills. All this evidence was admitted over the objections of the defendants based on various grounds, one of the grounds being that by the bill of particulars delivered the people were confined to the normal school transactions in said bill of particulars specified and relied on. This objection, which is relied on with apparent confidence by the counsel for plaintiff in error and which has been elaborately argued in their briefs, raises a question as to what is the office and effect of a bill of particulars.

It is insisted in support of the objection that the purpose of a bill of particulars is to inform the defendant of the nature of the evidence, and the particular transactions intended to be proved under the indictment, and that its effect is to limit that evidence on the trial to the items stated in the bill of particulars.

Bills of particulars had their origin in civil actions at common law, and came into use after the introduction of general forms of pleading. Where the declaration is general, as, consisting of what is known as the common counts, the defendant has a right to call for a detailed and specific statement of the claims which are made against him. 3 Chitty Prac. 612; 1 Tidd Prac. 596; 2 Chitty Pl. (16 Am. Ed.) 35, and cases cited.

The effect of the bill of particulars when furnished, is to narrow the general claims made in the pleading down to the

McDonald v. The People.

specific claims set out in the particular. It limits the claims for which a recovery may be had, but it is in no manner a limitation or specification of the evidence which the plaintiff may introduce to prove the claims thus detailed and limited. 2 Chitty Pl. 35, cases in note; Starkweather v. Kittle, 17 Wend. 21.

"The office of such a supplemental statement as a bill of particulars, is merely to limit the generality of a complaint and prevent surprise on the trial, but not to furnish evidence." Drake v. Thayer, 5 Rob. 701.

The purpose and effect of a bill of particulars in a criminal case must be the same as in a civil case. We find nowhere a suggestion that it has a different effect, when attached to an indictment, than when added to a declaration, and counsel admit that the same rule is to govern by citing to support their contention, mainly decisions in civil cases.

Bishop, in his Crim. Prac., Sec. 5644, says that the rule, as to particulars, is, that "the particulars shall impart the same information which a special count would do, not descending to specific acts with time and place. On the one hand enabling the defendant fairly to defend himself, and on the other hand not fettering the prosecution."

A large number of authorities are cited by counsel for plaintiff in error to sustain their contention, and language used in some of them, when taken without reference to the particular facts in the case or the particular point which the court is discussing, would give color or support to the doctrine that the bill of particulars limits the evidence to be offered instead of the claim or charge to be proved; but a careful examination of each case will show that no such principle is intended to be laid down, and after a careful examination of all the cases cited we are convinced that the true office and effect of a bill of particulars, in criminal as well as in civil cases, is to limit and make specific the claim or charge to be proved, and not to confine or restrain the offer of any relevant evidence which will support the claim or charge as thus limited. Such particulars are, properly speaking, no part of the indictment and can not vary the crime charged in the indictment by words

describing or stating the offense differently from its statement therein. For all the essential elements of the crime the indictment must be looked to, and the trial is of the crime there charged as limited but not changed by the particulars.

Particulars form no part of the record, but when furnished the people are confined to them as closely as if they were set out in a special count and the trial was to proceed on that count alone.

In the case at bar the indictment in all but one of the counts charged the defendants with conspiracy to obtain the money of Cook County by false pretenses. The bill of particulars stated for the information of the defendants the particular false pretenses which it would be proved had been made, the particular charges intended to be established against them by proof. The nature of the conspiracy charged they were entitled to know, and the ultimate facts which the State proposed to prove as acts done in pursuance of the conspiracy, but the means of proof, or what evidence would be produced to establish such ultimate facts, they were not entitled to know, and that information it is not the office of a bill of particulars to give.

The people could not convict unless they established by proof that some one or more of the twelve specified bills were false and fraudulent and that the defendants conspired to obtain the money of Cook County by falsely pretending that said false and fraudulent bill or bills were true and just, but any evidence, whether it consisted of bills for work done on other county institutions or of the acts or declarations of the defendants or either of them, which was relevant proof of a conspiracy by the defendants to obtain the money of the county by false pretenses in relation to the normal school bills, could not be properly excluded by the court upon the ground that the bill of particulars specified the normal school bills as the ones on which the people would rely. In other words, any evidence was competent to establish the charge as narrowed and specified in the bill of particulars which would have been competent if the same charge had been laid in a special count.

Therefore the court did not err in overruling objections to

McDonald v. The People.

evidence otherwise competent and relevant, which were based on the ground that it was not evidence directly relating to the bills specified in the bill of particulars.

Objections to the admissibility of Schneider's bills rendered to the county for work done and materials furnished for county institutions other than the normal school, were based upon the further ground that such bills tended to prove other crimes or conspiracies distinct from the crime or conspiracy for which the plaintiff in error and his co-defendant, McGarigle, were on trial.

The theory of the people was, that there was one conspiracy relating to all the work Schneider should do for the county upon all the different institutions on which he might be employed.   To this theory the testimony of Schneider gave direct support, and if the jury chose to believe him they were justified in finding that the corrupt combination did not have reference to the normal school work alone or to the work on any one of the other county institutions considered separately, but that the scope of the conspiracy extended to and included whatever work should be obtained by Schneider to be done for the county.   The object of the conspiracy was to obtain the money of Cook County.   The means was by false pretenses with reference to work and materials by fraudulent bills.   The false pretenses were to be made whenever a bill was rendered for work done or materials furnished for any "institution." Each false pretense was not a new conspiracy, but every false bill was an overt act in pursuance of the general conspiracy. The State was entitled to all the evidence which tended to prove the conspiracy as it was claimed to exist.

Of course, if the evidence showed a conspiracy which did not include the work on the normal school, the defendant would have to be acquitted, but proof of a conspiracy which was not confined to false pretenses with reference to the normal school bills as the only means, but included also bills for other work, would have a direct tendency to establish the charge as laid.   Suppose it had been in the power of the people to have produced on the trial a written agreement signed by all the parties to the alleged conspiracy, in and by which

they formally agreed with one another to act together, each doing certain parts, for the purpose of obtaining money from the county by means of false and fraudulent bills to be rendered for work done by Schneider on all the different county institutions, specifically naming them, could it be contended that such written agreement would not be competent evidence under this indictment to prove the false pretenses with reference to the normal school bills, because it also proved a combination extending to the bills of other institutions? But it may be said that the objection is not to the agreement but to the bills, which are overt acts different from those set out. The answer is, whenever the agreement is competent, the overt acts done in pursuance of it are competent. The State is not confined to the evidence of an agreement furnished by a coconspirator, when seeking to prove the conspiracy. The conspiracy may be proved by circumstances, that is to say, by the proof of facts from which the jury may imply it.

"There may be a conspiracy without overt acts; but the overt acts are properly to be looked at, because from them the jury can draw an inference as to the object of the conspiracy." Rg. v. Esdaile, 1 Fost. & F. 237.

The bills being admissible to prove the conspiracy, their admissibility is not affected by reason of the fact that they tended to show that plaintiff in error was guilty of other offenses, for two reasons: 1st. Acts constituting any one crime may be proved, where the prosecution is for one of the acts constituting the crime, not for the purpose of proving each part of the transaction as a distinct crime, but for the purpose of proving all of the one entire transaction. If several articles are stolen at the same time from the same person, there is not a separate larceny of each article, but all the articles are the subject of one larceny. Under an indictment for stealing one of the articles, proof may be given of the larceny of all, because the taking of all constituted but one offense, and a conviction for the stealing of one would bar a prosecution for the stealing of the others taken at the same time and from the same person. Wharton Crim. Pl. & Pr., 470; Waters v. People, 104 Ill. 544; Wright v. State, 17 Texas App. 152.

2d.   When the evidence offered tends to prove the issue to be tried, the fact that it also tends to prove some other crime will not render it inadmissible.   If its only tendency is to prove that the defendant did commit some other crime, and to render it, therefore, probable that he committed the one charged, or that he had a tendency to commit such crime, it will be erroneous to admit it.

So if the indictment here was for the crime of obtaining money by false pretenses, simply, it would not be competent to prove that the defendant had made similar false pretenses relating to other similar matters unless it were necessary to prove *scienter*.   Counsel for plaintiff in error cite and rely upon the case of Jackson v. People, 18 Ill. App. 508.   That case announces the rule last above stated, and in what is said in the opinion with reference to Tarbox v. State, 38 Ohio, 581, the distinction between such evidence, when offered to show a conspiracy and when offered to prove the falsity of the pretenses, is recognized by this court.

It is too well settled at this day to require any extended discussion, that any evidence which tends to prove the issue is competent, notwithstanding that it may be injurious to the defendant, and may tend to prove distinct offenses against him. " The notion that it is in itself an objection to the admission of evidence that it discloses other offenses, especially when they are subject of indictment, is now exploded.   If the evidence is admissible on general grounds, it can not be excluded on this ground."   Roscoe Crim. Ev., 90, and cases cited;   State v. Folwell, 14 Kan. 105;   Wharton Crim. Ev., Sec. 32, and cases cited.

The further objection is urged against the admissibility of these bills for work done on other institutions, on the ground that they were not sufficiently identified as Schneider's bills rendered to Cook County.   From the record it appears that the State's Attorney showed these bills, distinguishing them by numbers in red ink, to the witness Schneider, and that the said witness testified to the handwriting in which the bills were made.   Subsequently these bills were admitted in evidence, and we have not been referred by counsel to any part

of the record showing any objection to the admission, nor have we been able to find such objection.

We infer from the language used by the Judge in admitting them in evidence that they were objected to, not for the want of sufficient identification, but on the general ground of irrelevancy. If our inference is correct, then we can not entertain the objection here that the bills introduced were not identified. That objection should have been made when the bills were offered, and if not made then it will be treated as waived. Wrought Iron Bridge Co. v. Commissioners, 101 Ill. 518.

It is urged that the court erroneously admitted the books of account in which, Schneider testified, were kept the account of his business while he was engaged in work on the county institutions. Schneider fully identified the different books, and swore that they were kept by his direction, with the knowledge and consent of McDonald. They were kept, in part, by Driscoll, who was also the bookkeeper for D. F. Boyle & Company, of which latter firm McDonald was a member. Schneider swears that McDonald and himself were partners, and that between them it was arranged that Driscoll should aid to keep the books and accounts of the business. Connolly was engaged by Schneider, with McDonald's assent, and did part of the bookkeeping, he keeping the time book and day book, and Driscoll the journal and ledger. Schneider directed that entries against the county should be doubled, and swears that he told McDonald that he had given such general direction. According to Schneider, McDonald was a partner, or interested, under their arrangement, in all the work for the county which Schneider was doing. In view of this evidence of Schneider, were the books admissible?

It seems to us to be too plain to admit of dispute that they were, nor does it make the slightest difference as to their admissibility that it was not shown that they were correct as books of account, or that it was not shown that the entries in them were, in fact, made in strict accordance with Schneider's directions. The books were not offered or admitted to prove a claim based on the correctness of entries to be found in them. They were competent evidence, because they were the acts of

the conspirators, done and executed in furtherance of the conspiracy, and whether, with reference to the accounts and transactions entered in them, they spoke the truth or falsehood, did not affect the question of their admissibility as evidence.    It is argued that the fraudulent bills which were introduced in evidence did not fit the accounts in the books, and, therefore, that it was not the intent of Schneider to use the books to support the bills, and that he did not keep them for that purpose. It is true that Schneider swears that the bills, when made out for presentation to the county, were increased in amount greatly beyond what the charges in the books for the same work would sustain, but he also swears that he ordered the charges against the county to be doubled, as entered in the books, and some of the accounts in the books are evidence of a convincing character that this direction was carried out by the bookkeeper.    It further appears that these same books were produced by Schneider and McDonald to a committee of the County Commissioners to satisfy them of the justness and correctness of some of Schneider's bills against the county.

Therefore, whatever relation the books were to bear to the false bills in the original design, they were actually used to further the objects of the conspiracy.    But the testimony of Schneider makes the books admissible, and the private memorandum book kept by Driscoll was under that testimony admissible, as well as the general books.    The argument that these books were not competent against plaintiff in error goes, to a large extent, upon the assumption that his evidence denying all knowledge of them is true, but in passing on the question of their admissibility, it is Schneider's testimony that must be taken as true, and taking that as true, as we before said, the question of the admissibility of these books is too plain for argument.

Exception is taken in the arguments of counsel for plaintiff in error to the fact that two paper writings in the form of statements of accounts were used in evidence before the jury without any identification, and without having been specifically offered in evidence.    It appears that one of these papers was attached to the cover of the ledger which was introduced in

evidence, and that the other was pinned to the paper thus attached. It does not appear that the attention of the court was in any manner called to those attached papers when objection was made to the introduction of the ledger, and the objection to the ledger, which was offered with the other books, was a general one going to the relevancy of the accounts contained in it, and not directed against any particular statement or account contained therein on the ground that it had not been identified.

Counsel for defendants had an opportunity to inspect the book when offered, and if it contained any account or paper to which there was the special objection that it lacked identification, they were bound to call the attention of the court to it, and it would have been excluded unless the proof to entitle it to admission was supplied. Having failed to make the point on the trial it can not be made now. But we gather from the statements in the briefs of counsel that these papers were commented on as evidence by counsel for the State, but not till after one of them had been first read to the jury and commented on by one of the counsel for defendant. If that is true, the defendant can not now except to the papers as evidence.

It is suggested in the reply brief, however, that the reference to this evidence by defendant's counsel does not appear in the record, and that, therefore, we are bound to treat the evidence as erroneously introduced.

But the record shows these papers or accounts in the ledger, and no specific objection to them.

Relevant evidence found in the record must be regarded as properly there, unless it appears that some valid, specific objection to it was called to the attention of the trial court.

Besides the general books of Schneider and the private memorandum books kept by Driscoll, there were introduced in evidence certain other books known as "false books" to which objection is urged. The admissibility of the false books depends on much the same considerations as do those of the general books. They were made out for the purpose of supporting the bills which Schneider was presenting to the

county. The bills had got far ahead of the general books, and to make the charges appear to equal the bills, the books were gotten up. They were written by Driscoll and Connolly (who appear to have been knowingly aiding the conspiracy) by direction of Schneider, and, as he testifies, with the concurrence of McDonald. They were made in furtherance of the common design and were, therefore, competent.

Extended argument has been made by counsel on both sides to show the import and significance of the various accounts and items contained in all these books. It would serve no useful purpose for us to follow counsel into this discussion.

The inferences to be drawn from the books and all the various entries and accounts therein considered in connection with all the other evidence in the case, were for the jury. We have to consider only the relevancy and competency of the evidence; its weight or value it is not ordinarily the province of the court to determine.

It was the theory of the people on the trial that the particular conspiracy alleged to exist between the defendants in relation to Schneider's bills for work on the different county institutions was but a part of a general conspiracy to defraud the County of Cook, which included as members, besides the defendants on trial, several of the County Commissioners and various contractors and employes of the county. That the general combination originated long before Schneider commenced to do work for the county, and that at the time the Schneider frauds were perpetrated, this combination practically controlled all contracts with the county for labor or for materials, and that the defendants, McDonald and McGarigle, were agents of the other members of the combination for the purpose of collecting and distributing the moneys obtained through the means that might be used, and that they, with other county employes, promoted the object of the combination by certifying to the correctness of fraudulent and excessive bills against the county.

Much evidence was introduced tending to sustain the hypothesis of the existence of this huge conspiracy, and to connect defendants with it, and to implicate others who were

alleged to belong to it. This evidence was all objected to generally and in detail, and its admission is now assigned as error. The hypothesis that there was a general conspiracy to obtain money by false pretenses, which. embraced all the Schneider transactions with the county, and particular con-spiracies relative to them, was certainly a pertinent one; to establish the truth of the hypothesis would be to prove the crime charged in the indictment. Therefore, it logically follows that any evidence which tended to support the hypothesis was relevant to the issue.

"All facts that go either to sustain or impeach a hypothesis, logically pertinent, are admissible. But no fact is relevant which does not make more or less probable such a hypothesis. * * * When the question at issue is fraud, peculiar latitude in the reception of facts, both inculpatory and exculpatory, is allowed, as it is only by induction from all the circumstances of the case that in issues of this class a just conclusion can be reached." Wharton Crim. Ev., Sec. 23–24.

Roscoe, in his Crim. Ev., says, "the evidence in conspiracy is wider than, perhaps, in any other case, other principles as well as that under discussion tending to give greater latitude in proving the offense." Secs. 92–93.

The decided cases illustrate the extent to which the inquiry will be allowed where combination in criminal offenses is attempted to be established. Extracts from the authorities cited by counsel for the people must be omitted here, but an examination of them will, in our opinion, fully sustain the following statement which we take from the brief:

"In all cases of conspiracy and in all prosecutions for crimes perpetrated in pursuance of a conspiracy, it is proper to show the entire history and plan of the conspiracy, and whatever has been done in pursuance of the conspiracy, in so far as may be necessary to connect the defendants with the crime charged, and to explain their acts and motives, although the defendants may thereby be implicated in numerous overt acts constituting distinct indictable offenses, and although the conspiracy may be disclosed in numerous indictable aspects." Ford v. State, 34 Ark. 649; State v. Greenwade, 72 Mo. 298;

McDonald v. The People.

Bloomer v. State, 48 Md. 521; State v. Glidden, 8 Atlantic Rep. 890; Carroll v. Commonwealth, 84 Pa. 107.

The objection to any of the evidence, then, which rests on the ground alone that such evidence tended to prove a general conspiracy of the nature stated, is not tenable. There is, however, much of the evidence which it is contended did not tend to prove such conspiracy to obtain money by false pretenses, but rather to prove bribery, or an attempt to extort money from persons who were dealing with the county.

One Abbott testified that McGarigle told him it would cost him $11,000 to get the contract to furnish the coal to the county institutions for the year 1886-7; that he agreed to pay it; that McGarigle so managed as to have the matter of awarding said coal contract by the County Board postponed till he had paid the money, and thereupon the contract was awarded to him. That McGarigle said that he did not get any of the money himself, and afterward Abbott sent him $500.

It is very manifest that there was a conspiracy to get this money, and that McGarigle was aiding the scheme, and also that the County Commissioners, or a number of them, were co-operating with him.

But it is said it did not show that the money of the county was to be obtained by false pretenses. That may be true if you leave Abbott out of the combination, but in considering the natural tendency of this evidence he, as well as the other conspirators, must be reckoned in. The natural inference is that he was to get back the money he paid from the county, and that he could only do it by false weights or a false price. His bills would have to be passed and O. K.'d by the county's employes, and audited by the Board, and some false pretense by the conspirators was inevitable, or we must suppose a gift of this large amount from him to the others, with no corresponding benefit to himself.

Inferences from the facts are drawn in accordance with the common principles of induction, and are to be judged by the common and received tests of truth; and such inferences are not to be adopted as to run counter to the ordinary experience as to the motives and intentions of men as indicated by

their conduct. The supposition of a gift of such a sum does not, under the circumstances, accord with human experience, and must, therefore, be rejected, and the natural inference adopted, which seems to us to be that the money paid by Abbott was to be obtained for him again by false pretenses of some kind in his dealings with the county. But if it be admitted that the Abbott transaction did not, standing by itself, prove that false pretenses against the county were to be used, it was competent to be considered in connection with other facts tending to establish that conclusion. A single circumstance may have little strength and of itself afford no foundation on which to base a given hypothesis, but when joined to many more of the same nature, all fitting each other, and having the same relation and tendency, the whole, when united, may form an arch strong enough to support a presumption practically conclusive.

"A conspiracy is proved, either expressly or by the proof of facts from which the jury may infer it. It is seldom proved expressly. * * * In nearly all cases, therefore, the conspiracy is proved by circumstantial evidence, namely, by proof of facts from which the jury may fairly imply it." 2 Arch. Crim. Pr. & Pl. 1054.

The prosecutor is entitled to proceed in his case, step by step, and to make his chain of proof, link by link, and where an act is apparently innocent or equivocal in character, other acts of the same party may be shown to give it intent.

"Taken by themselves the acts of conspirators are rarely of an unequivocally guilty character, and they can only be properly estimated when connected with all the surrounding circumstances." Roscoe Crim. Ev., Sec. 93.

Some of the acts of McGarigle, with relation to Schneider's bills, were of this equivocal character, and his transaction with other contractors were competent as against him to give color to his acts in furtherance of the payment of Schneider's bills.

Upon both grounds, that is to prove a conspiracy and also to establish McGarigle's guilty intent, the testimony of Middleton was clearly admissible, and upon the former ground, the testimony of Pfeifer.

The evidence of the defendant McDonald's conversation with the Clows is of the same character, and had, in our opinion, the same tendency as that of the Abbott transaction above discussed. It showed that defendant had such relations with the power that controlled the purchases of material for county use, that he could impose a condition on those who desired to sell, and though he did not, in that instance, succeed, his negotiation was an attempt to further the common object. Substantially the same considerations determine the admissibility of Klehm's first conversation with the Clows. Klehm's attempt to induce the Clows to pay the commissions demanded by McDonald, and the arguments he used to them, were acts in furtherance of the common object. His statement, "we are in the hands of a ring," was not an admission binding only to himself, but was a reason given to persuade the Clows, and was, therefore, an act in furtherance of the conspiracy.

There are other objections relating to the testimony which we do not deem it necessary to discuss in detail.

We are of the opinion that no error was made by the court in the admission of evidence, save in admitting the testimony of the Clows and Johnson as to the second conversation with Klehm. We have to consider whether this was such error as requires a reversal of this judgment. This conversation occurred in January, 1887, about a year after the first conversation of Klehm with the Clows, and was commenced by Klehm's attempting to deny or explain a remark which one of the Clows stated he had made in the first conversation. The talk drifted from that subject to the Schneider bills, which Clow told Klehm were outrageous, and Klehm said that he could not go into details of all the business; he had been busy with the finances of the county. Then Clow and Johnson, in Klehm's presence, severely characterized the voting away of the county's money without knowing anything about the prices, and criticised Klehm's course in voting on these bills with the majority of the Board, and Klehm made no response. This had a slight tendency to prove a general conspiracy and would be clearly competent against Klehm, if he were on trial, as being in the nature of an admission. It also tended to prove

the falsity of Schneider's bills against the county. Upon the latter point it was clearly harmless, for there is and was upon the trial practically no issue on that question. It is assumed by the defense that they were false and fraudulent, but denied that defendants were concerned with them. While, as we have said, this testimony had a tendency to prove the existence of a general conspiracy, that tendency is so slight as to be almost insignificant.

The inference is only to be drawn from Klehm's silence, not when a charge of general conspiracy was directly made but when corruption in the County Board was insinuated. This is the weakest kind of evidence. Even as against Klehm it could have but little weight. As against plaintiff in error it had no tendency whatever to identify him or his co-defendant, McGarigle, as conspirators. It did not attack the character of either or tend to prove any fact which would incline the jury to look on plaintiff in error as likely to be guilty of crime, or which would, in any manner, prejudice them against him.

The rule is well settled that where evidence is erroneously admitted it will vitiate the verdict unless the court can say that such evidence worked no injury. The cases in which this rule is applied will be found to be cases where the evidence tended strongly to injure, as in the case of Jackson v. People, 18 Ill. App. 518, where the improper evidence consisted of the testimony of a policeman, that the defendant had been charged with a crime similar to the one for which he was on trial and had substantially admitted the charge.

If the manifest tendency of the illegal evidence is to injure or mislead, the court will not undertake to say that such was not its effect, but in the fair administration of justice will grant a new trial. But where the evidence erroneously admitted has but a remote and uncertain tendency to affect the issue, and is not misleading or confusing or calculated to excite prejudice, and where the court finds the hypothesis on which it bears abundantly established by other evidence properly in the case, the error in admitting the evidence will not authorize a reversal. The evidence complained of is, in our opinion, of this indifferent character, and, therefore, will not affect the

McDonald v. The People.

verdict, and for us to reverse this case for the error in admitting it would be to act on a pretext, and not on a reason, and would serve to obstruct and embarrass rather than to promote the administration of public justice.

We have carefully examined the instructions given to the jury in behalf of the people, and have considered the criticisms made upon them by the counsel for plaintiff in error and we find them to be substantially accurate and unobjectionable. Some of them may be obnoxious to mere verbal criticism, but when considered together they present a full, fair and clear statement of the law applicable to the case upon the theory presented by the people. Neither do we find any error in the modification or refusal by the court of instructions offered in behalf of the defendant. We do not feel called upon to discuss each point made by counsel on this question of instructions. The error which appears to be relied upon with most confidence is the refusal of the court to give defendants' instruction 27, which was as follows:

"The jury are instructed that where the prosecution relies upon circumstantial evidence for a conviction, the jury must be satisfied beyond a reasonable doubt that a crime has been committed by some one, in manner and form as charged in the indictment, and then they must not only be satisfied that all the circumstances proved are consistent with the defendants' having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendants are the guilty persons. If there is any one single fact proved to the satisfaction of the jury by a preponderance of the evidence which is inconsistent with the defendants' guilt, this is sufficient to raise a reasonable doubt, and the jury should find the defendants not guilty."

The instruction is not correct as a proposition applicable to this case, for the reason that while the people did rely on circumstantial evidence for a conviction, they did not rely on circumstantial evidence *alone*. There was in the case the direct testimony of Schneider as to the agreement with plaintiff in error, which, if believed by the jury, was sufficient to authorize a conviction. Therefore, the direction that the jury should

find the defendants not guilty if any one fact proved by the circumstantial evidence was inconsistent with guilt, could not be given, for it would be equivalent to a direction to disregard the direct evidence. The existence of such inconsistent fact only breaks the chain of circumstantial evidence on which an inference of guilt depends and leaves the direct proof to stand with such value as the jury may see fit to attach to it. Moreover, the instruction as asked is abstract in form, and the refusing of abstract propositions of law can not be assigned for error, even where they are accurately drawn. Ryan v. Donnelly, 71 Ill. 100; Devlin v. People, 104 Ill. 504.

True, it is the practice to give such propositions in criminal cases, to inform the jury as to the principles that are to govern in ascertaining the truth, and in this case the very rule which this instruction was intended to state, but failed to state accurately, was given to the jury by the court in the defendants' sixth instruction as modified.

The next error pressed by counsel, which we take up in the order in which it is presented in argument rather than in the order in which it arises on the record, is the challenge to the array of jurors, which was overruled by the court below. On May 11th the court ordered a special venire for fifty petit jurors. Plaintiff in error filed a written motion challenging the array and asking that the special venire be quashed, and stating as grounds of said motion that the regular panel of jurors for the said May term of the Criminal Court had not been exhausted when the venire was issued. To this question the State entered an oral demurrer, which the court sustained. On May 13th the court allowed the State's Attorney to file *nunc pro tunc* instead of the demurrer an answer and demurrer to said challenge. The answer stated that at the time the special venire was issued the regular panel of jurors for the May term of the Criminal Court, held and presided over by Judge Shepard, had been exhausted.

The court then and there offered to allow the defendants to reply to the answer and to introduce evidence, but defendants declined and thereupon the court entered an order sustaining the answer and overruling the challenge. If the answer was

McDonald v. The People.

true the Judge was right in overruling the challenge. But the argument seems to be that the court, having erred in sustaining an oral demurrer which admitted the facts stated in the motion, it was wrong for the court to go back and cure such error. Defendants have no vested rights in an error committed. It is not only the right but the duty of the court to correct an error and set the record right where it can be done in apt time. Counsel say that before the answer was filed, they had used a peremptory challenge belonging to plaintiff in error, upon one of the jurors summoned on this special venire, and that the court did not, when he offered to allow defendants to reply to the answer and sustain their challenge by proof, offer to restore this peremptory challenge. But if defendants had gone into evidence and sustained their challenge to the array, the necessary effect would have been to restore any peremptory challenge to them which had been used in discharging a juror from the improperly summoned panel. When the challenge to the array should be found to be well made, would be time enough to deal with the question as to the peremptory challenge. We think the course pursued by the court was eminently just and fair, and that no error was made against the defendants by the course of practice adopted.

It is urged that the closing argument of the State's Attorney contained statements of, and allusions to matters which were not in evidence and not germane to any reasonable discussion of the case before the court, and which tended to arouse the prejudice of the jury against the plaintiff in error, such as denunciations of the brother of plaintiff in error, and reflections on what was said to be the bad and dangerous influence which he exerted in the community, though he was not on trial and was not a witness.

The opening speech to the jury of the counsel, who aided the State's Attorney in the prosecution, is also alleged to have been improper, and to have tended to prevent a fair trial.

The discussion of such questions are embarrassing to a reviewing court. The errors alleged are not errors of the court. The injuries that may arise from improper remarks in argu-

ment it is very difficult for a trial court to prevent and almost impossible for any court to measure or ascertain.

The record does not ordinarily contain the remarks or speeches of counsel for defendants, nor does it present the scene of the trial and its surroundings and attending circumstances which would often explain and account for some remark which, taken out of all relation to such circumstances, seems uncalled for and unprofessional.

We think the State's Attorney's allusion to the brother of defendant might much better have been left out, but we can not attach such importance to such remarks as to reverse the case upon them.

We regard the suggestions made to the jury in the opening speech, to which exceptions were taken, as of a much more objectionable character. Attacks upon and ridicule of established rules of procedure and well-founded principles which govern the administration of criminal law are certainly anomalous in the speech to a jury of one who represents the State in asking the conviction of persons accused of crime, and it may be contended, with great plausibility, that such arguments, coming from counsel who represents the people, might tend to lead the jury to disregard their duty and responsibility toward the defendants. It must be remembered, however, that in this case the remarks having this improper tendency were made at the commencement of the trial, and that the counsel for the defendants had full opportunity to answer the suggestions before evidence was heard; that the trial lasted upward of twenty days, and that the jury were fully instructed by the court as to their duty toward the defendants and as to all the defendants' rights. Whatever, therefore, might be the effect, had the same line of argument been pursued in a closing speech, we are of opinion that under the circumstances of this case it can be said that it could have had no such material influence as to authorize the disturbance of a verdict warranted by the evidence.

Many errors are assigned by counsel and have been argued by them, which we do not discuss. We have not, in the examination which we have given to the record, however, over-

looked the points made, but have given them all patient consideration, and deem it sufficient to say that we find no error which, in our opinion, warrants the ordering of a new trial. If the witness, Schneider, told the truth, then the plaintiff in error was properly convicted. Whether said witness was worthy of belief was a question for the jury, who saw him upon the stand and had an opportunity to observe him during many days while he was being examined and cross-examined before them. Without his evidence a verdict of guilty would not be warranted, but upon his testimony alone, and without corroboration, the jury had the right to rely. We do not find it true, as argued, that he was not corroborated. There is much evidence in the record which, in our opinion, tends strongly to support the story which he told.

Careful examination of the record discloses to us no ground on which this court can properly interfere with the judgment of the Criminal Court; and said judgment must therefore be affirmed.

*Judgment affirmed.*